UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

MARK TERRENCE MURRELL     |

        |

    Plaintiff     |     Civil Action No. 7: 08-81-KKC

        |

vs.     |

        |

J. GUY, ET AL.     |     **MEMORANDUM OPINION**

        |         **AND ORDER**

    Defendants     |

**\*\*\*\* \*\*\*\* \*\*\*\***

Plaintiff Mark Terrence Murrell ("Murrell") has filed a *pro se* civil rights complaint pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) [R. 2], and the Court has granted his motion to proceed *in forma pauperis* by separate Order. [R. 7] In his Complaint, Murrell alleges that the Defendants used excessive force to restrain him following a search of his cell in 2007.

Defendants Guy and Delong have now filed a Motion to Dismiss, or In the Alternative, Motion for Summary Judgment [R. 22], Murrell has filed his Response thereto [R. 24], and the Defendants have filed their Reply in further support of the motion. [R. 26] This matter is ripe for adjudication.

## I.    FACTUAL BACKGROUND

At approximately 7:45 p.m. on February 7, 2007, Murrell's cell in the Special Housing Unit ("SHU") was being searched by Defendant Miller while Defendants Guy and Delong stood nearby. Murrell alleges that due to some undefined "animosity" between himself and Guy, Guy pushed Murrell up against the wall, and thereafter "slammed" him to the floor, hitting the left side of his face and closing his handcuffs "as tight as they would go." Guy then put his full weight on Murrell while

Delong employed a "wrestling technique" to secure Murrell which made it hard for him to breathe. Murrell was then pulled back on to his feet and led out of the area. Murrell further alleges that while being moved to a new location, he was shoved "face first" into the bars of a doorway gate.

The Incident Report filed by Guy indicates that Murrell was using abusive language directed at Guy, and Murrell then escaped from his handcuffs and turned towards Guy in a threatening manner. When Guy pushed Murrell to the wall to control him, Murrell continued to actively resist. According to the report, Guy pushed Murrell to the floor, but Murrell attempted to bite Delong, who had joined to assist Guy, and Murrell attempted to kick Miller. A separate incident report filed by Delong regarding the same events states that during the course of his efforts to assist Guy in restraining Murrell, he recovered a 9" homemade weapon "laying next to the back of the inmate Murrell's neck and head near his hair or dread locks." The homemade weapon was "a 9" piece of plexiglass sharpened to a point on one end and a cloth handle on the other end." [R. 2, Exhibits at pgs. 15, 17 "Incident Report"]

After the incident, Murrell was examined by prison medical staff, who noted Murrell's subjective assertions of pain in his wrists and abrasions on his chin, neck, and shoulders. The prison nurses treated him with only minor first aid, but recommended that he be taken to the Highlands Regional Medical Center ("HRMC") for x-rays to ensure that no bones were broken. [R. 2, Exhibits at pg. 4 "Inmate Injury Assessment and Followup"] The x-rays taken at HRMC did not indicate any evidence of broken bones, and medical staff prescribed extra strength Tylenol for the pain. [R. 22-5 at pg. 2, Declaration of Sherry Slone, Registered Nurse at USP-Big Sandy]

On February 26, 2007, Murrell filed a grievance with the warden regarding the incident in which he complained that Delong assaulted him and "planted" the homemade knife on him. On

2

March 2, 2007, the warden responded that Murrell's allegations of staff misconduct would be investigated, but denied the grievance for administrative purposes.

On March 14, 2007, Murrell filed an appeal of that decision to the BOP's Mid-Atlantic Regional Office ("MARO"), which was not docketed until April 4, 2007.  While that appeal was pending, Murrell was apparently advised by BOP staff that he would soon be transferred to another BOP facility.  On March 27, 2007, Murrell wrote a letter to the BOP's Central Office in which he states that he was told he would be transferred to a federal prison in Atlanta on March 29th, and that because he had not yet received a response from MARO to his grievance, "To be sure that I meet the deadline in my filing process, I may just file the BP-11 ahead of time, to meet the proper standard schedule."  This letter did not identify the Remedy ID for the grievance to which Murrell was referring.  This letter was stamped received by the Central Office on April 12, 2007.

On April 5, 2007, Murrell was transferred out of USP-Big Sandy en route to another federal prison.  On April 17, 2007, MARO issued a decision letter which advised Murrell that all allegations of staff misconduct are investigated, but that his appeal was otherwise denied.  [R. 22-2, Affidavit of Lori Brown, Legal Instruments Examiner at MARO, at pgs. 2-3, 19-23]

On April 19, 2007, Murrell arrived at USP-Coleman in Coleman, Florida.  [R. 22-2, Affidavit of Lori Brown, Legal Instruments Examiner at MARO, at pgs. 2-3]  Murrell acknowledges that, upon his arrival at USP-Coleman, he received (1) MARO's letters dated April 20 and 23, 2007 acknowledging receipt of his regional appeal, and (2) MARO's letters dated April 20 and 23, 2007 extending its time to respond to his appeal until June 3, 2007.  [R. 9 at pg. 3; R. 24 at pg. 11] Murrell appears to deny that he ever received MARO's letter denying his appeal on the merits.

3

On April 20, 2007, the BOP's Central Office responded to Murrell's March 27, 2007 letter, in which it advised Murrell that his letter did not include sufficient information for the BOP to respond, such as by providing the Remedy ID to which it pertained.  This correspondence was apparently mailed to USP-Big Sandy, and is stamped received at that facility on April 30, 2007. Murrell did not file an appeal to the Central Office following MARO's denial.  Murrell has filed  5 other grievances since his arrival at USP-Coleman.

## II.    DISCUSSION

### A.    <u>Summary Judgment Standard</u>

Because the Defendants have submitted affidavits and exhibits in support of their motion and invited the Court to consider materials extrinsic to the face of the Complaint, the Court must treat their motion to dismiss as one seeking summary judgment pursuant to Rule 56.  FED. R. CIV. P. 12(b); *Mays v. Buckeye Rural Elec. Co-op, Inc.*, 277 F.3d 873, 877 (6th Cir. 2002) (district court may properly consider motion to dismiss as one for summary judgment when invited to consider matters outside the pleadings); *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir. 1995); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (where defendant moves both to dismiss and for summary judgment, plaintiff is on notice that summary judgment is being requested, and the court's consideration as such is appropriate where the nonmovant submits documents and affidavits in opposition to summary judgment).

Rule 56 requires the entry of summary judgment for the moving party if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992).  The moving party initiates the process by asserting that there is not sufficient evidence

to uphold a jury verdict in the nonmovant's favor on at least one essential element of the nonmovant's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."); *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005); *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004).  If the totality of the evidence submitted "would require a directed verdict for the moving party," summary judgment must be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

In response, the nonmovant must demonstrate the existence of specific facts which show that there is a genuine issue of material fact for trial.  He cannot rely merely on the pleadings but must specifically designate affidavits, depositions, interrogatory responses, and admissions which support his position on the facts.  FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986); *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003).  The nonmovant's evidence must be sufficient to support a jury's verdict in his favor.  *Anderson*, 477 U.S. at 251.  If the applicable substantive law requires the nonmovant to meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial.  *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993).

Defendant Miller has not filed an Answer to the Complaint, or otherwise joined in Guy and Delong's motion for summary judgment.  Pursuant to 28 U.S.C. §§ 1915e, 1915A, the Court must review a Complaint and dismiss it if the Court determines it to be frivolous, malicious, fails to state

5

a claim upon which relief may be granted, or seeks monetary damages against a defendant which is immune from such relief. The Court will review the claims against Defendant Miller under this standard.

### B.     Murrell Failed to Properly Exhaust his Administrative Remedies.

42 U.S.C. § 1997e(a) requires a prisoner challenging prison conditions pursuant to 42 U.S.C. § 1983, *Bivens*, or other federal law to exhaust all available administrative remedies before filing suit in federal court. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Wyatt v. Leonard*, 193 F.3d 876, 877-78 (6th Cir. 1999). The prisoner must comply with all procedural rules in the grievance process, including meeting all applicable filing deadlines. *Woodford v. Ngo*, 126 S. Ct. 2378, 2387-88 (2006). Because Section 1997e(a)'s exhaustion requirement is mandatory, claims that are not properly exhausted are conclusively barred. *Id.* at 2382.

The administrative remedies available to prisoners incarcerated in BOP facilities are provided by the inmate grievance process set forth at 28 C.F.R. §§ 542.10-.19. Before filing a formal grievance, the prisoner must give the prison staff the chance to correct the problem themselves by presenting his complaint informally by submitting a Form BP-8. 28 C.F.R. § 542.13(a). If this fails to resolve the issue, the prisoner initiates the formal grievance process by filing a Form BP-229, a formal written request to the Warden, within twenty (20) days of the event grieved. 28 C.F.R. § 542.14(a). The Warden must decide the grievance within twenty (20) calendar days. 28 C.F.R. § 542.18. If the Warden does not grant the prisoner the relief he requests, the prisoner may appeal by filing a Form BP-230 with MARO within twenty (20) days of the Warden's denial. 28 C.F.R. § 542.15(a). MARO must decide the appeal within thirty (30) calendar days. 28 C.F.R. § 542.18.

If MARO does not grant the prisoner the relief he requests, the prisoner may appeal by filing a Form BP-231 with the Central Office within thirty (30) days of MARO's denial.  28 C.F.R. § 542.15(a). The Central Office must decide the appeal within forty (40) calendar days.  28 C.F.R. § 542.18.

If the BOP decides at any level that the time allowed for it to respond to the grievance or appeal is not sufficient for it to make an appropriate decision, it may give itself an extension of time to respond once at each level -- by twenty (20) days at the institution level, thirty (30) days at the Regional Office level, and twenty (20) days at the Central Office level.  28 C.F.R. § 542.18.  If the BOP rejects a grievance or appeal at any level and does not give the prisoner the opportunity to correct the defect, the prisoner may immediately appeal the rejection to the next appellate level.  28 C.F.R. § 542.17(c).  If the prisoner does not receive a response from the BOP within the time allowed (including any extensions), the prisoner may consider the absence of a response to be a denial at that level.  28 C.F.R. § 542.18.

Defendants first contend that because Murrell's administrative grievances only challenged the propriety of Delong's conduct, his current claims against Guy and Miller are unexhausted and must be dismissed.  [R. 23 at 8, *citing Curry v. Scott*, 249 F.3d 493, 504-05 (6th Cir. 2001)]  Prior Sixth Circuit precedent to this effect was expressly overruled by the Supreme Court in *Jones v. Bock*, 127 S.Ct. 910, 922 (2007) ("nothing in the [PLRA] imposes a "name all defendants" requirement along the lines of the Sixth Circuit's judicially created rule.")  The PLRA requires an inmate to exhaust a ***claim*** before pursuing judicial relief, not to identify and challenge the conduct of all those who may be liable.  It is of course conceivable that an inmate's failure to identify a particular defendant in a grievance would render a claim against him or her unexhausted where his or her conduct was sufficiently remote or unrelated to that challenged by the prisoner's grievance.  But such

7

is not the case here, where all of the defendants were directly involved with subduing Murrell, and that conduct is identified in Murrell's grievance as the basis for his claims.

Defendants are correct, however, that Murrell failed to exhaust his administrative remedies. Murrell filed a grievance with the warden and subsequently appealed the warden's denial to MARO, both as required by 28 C.F.R. § 542.14(a); § 542.15(a).  As evidenced by his March 27, 2007 letter to the Central Office, he was actually aware of the need to appeal any adverse determination to the Central Office to exhaust his remedies, yet failed to do so.

In his Response to Defendants' motion, Murrell appears to contend both that (a) he did not receive MARO's letter denying his regional appeal, relieving him of any responsibility to pursue exhaustion further; and (b) his March 27, 2007 letter to the Central Office should qualify as the appeal to the Central Office required by 28 C.F.R. § 542.15(a).

Murrell's first contention - that he was relieved of any obligation to pursue administrative remedies further when he did not receive a substantive response from MARO - must be rejected as a matter of law.  As previously noted, Murrell's March 27, 2007 letter to the BOP's Central Office establishes that he was subjectively aware of the need to appeal any adverse determination by MARO to the Central Office in a timely fashion.  Murrell alleges that he never received MARO's April 17, 2007 letter denying his appeal, an allegation the Court accepts as true for purposes of evaluating this Motion.

However, courts have repeatedly held that where, by statute or regulation, prison officials are required to respond to an inmate's grievance within an established time frame, the "proper exhaustion" requirement embodied in 28 U.S.C. § 1997e requires a prisoner to do more than sit idly by in the face of extended silence from prison personnel:

8

Mendoza's claim that he never received a copy of the superintendent's adverse decision, which must be accepted for purposes of this motion in light of the factual dispute, is not material to this result. If, as a result of negligent error by prison officials-or even their deliberate attempt to sabotage a prisoner's grievance-the prisoner does not receive a copy of the decision on his complaint, he is not thereby forestalled from appealing ... The regulations mandate a prompt decision on all grievances ... and specifically provide that if the determination is delayed, the inmate may appeal to the next level of review ... without waiting for administrative action. ... Thus, even accepting Mendoza's claim that he was never notified of the rejection of his grievance (or even had that rejection never occurred), the regulations clearly permit an appeal, and filing such an appeal is accordingly required by § 1997e(a) before a suit can be brought in federal court. This inescapable conclusion has been consistently and unsurprisingly reached by courts in this district.

*Mendoza v. Goord*, 2002 WL 31654855 (S.D.N.Y. 2002) (unpublished disposition) (inmate failed to administratively exhaust excessive force claim against officers by failing to further pursue appeal where regulations permitted appeal if agency failed to render decision within time required by regulations) (*citing Martinez v. Williams*, 186 F.Supp.2d 353, 357 (S.D.N.Y. 2002) (inmate who allegedly received no response to grievance "could have and should have appealed the grievance in accordance with grievance procedures") and *Gibson v. Goord*, 280 F.3d 221 (2nd Cir. 2002)).

Here, Murrell admits receipt of MARO's letters dated April 20 and 23, 2007 which acknowledged receipt of his regional appeal and extended its time to respond to his appeal until June 3, 2007. Murrell further admits that, even though he never received a response from MARO up to and including the date on which he filed his Complaint in this matter on April 21, 2008, he never pursued exhaustion within the BOP any further, long after MARO's extended deadline on June 3, 2007 had come and gone. 28 C.F.R. §542.18 expressly provides that if the prisoner does not receive a response from the BOP within the time allowed (including any extensions), the prisoner may consider the absence of a response to be a denial at that level. Given the ready availability of a route for further appeal in the face of silence from MARO well beyond it's own deadline, Murrell's failure

9

to avail himself of that appeal right constitutes a failure to exhaust administrative remedies as required by Section 1997e.  *Kearsey v. Williams*, 2002 WL 1268014, *2-3 (S.D.N.Y. 2002) (unpublished disposition) (inmate required to pursue full appeal process even where it was alleged that prison officials had not investigated complaint).

Murrell also contends that the letter he sent to the Central Office on March 27, 2007 -- three weeks before MARO issued its decision -- constitutes his appeal from that decision.  This argument must also fail, as the Supreme Court has held that the administrative exhaustion demanded by 28 U.S.C. § 1997e requires "proper" exhaustion, meaning exhaustion accomplished in full compliance with the agency's critical procedural rules:

> Administrative law [creates an incentive for parties to give the agency a fair and full opportunity to adjudicate their claims] by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

*Woodford v. Ngo*, 548 U.S. 81, 85-87 (2006) (concluding that the PLRA's exhaustion requirement "means proper exhaustion.").  Murrell's letter, sent weeks before MARO issued its decision letter, manifestly failed to comply with the timing requirements established by Section 542.15(a).  Accordingly, Murrell failed to properly exhaust his administrative remedies, and in the process deprived the BOP of the opportunity to fully and finally address the merits of his concerns.  One of the core concerns of the PLRA was to scrupulously protect this right, and the Court cannot excuse Murrell's noncompliance without doing violence to both the text and plain meaning of the statute. *Id*.  Because Murrell did not pursue his administrative grievances within the time frame required by the applicable BOP regulations, and can certainly no longer do so at this juncture, his claims must be dismissed with prejudice.  *Woodford*, 548 U.S. at 85.

10

The Court further notes that Murrell's transfer between institutions does not excuse his failure to continue with the grievance process. The record indicates that Murrell was subjectively aware of the need to pursue this grievance up to and including the Central Office, yet he failed to do so, while continuing to file new grievances with the BOP after his arrival at USP-Coleman. A prisoner's transfer from one facility to another does not render the grievance procedures at the transferor facility "unavailable" for purposes of exhaustion. *Santiago v. Meinsen*, 89 F.Supp.2d 435, 441 (S.D.N.Y. 2000); *Bell v. Reusch*, 2008 WL 2477693, *3-4 (N.D. Ill. 2008) (unpublished disposition) (failure to exhaust is not excused by a prisoner's transfer to another institution where prisoner failed to resume appeal process after transfer).

### C.     Murrell has Failed to Establish an Excessive Force Claim.

The Eighth Amendment protects inmates against inhumane treatment or conditions while incarcerated. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). An excessive force claim under the Eighth Amendment includes both an objective and subjective component. The objective component requires the inmate to show that he or she suffered more than *de minimus* pain or injury. *Hudson*, 503 U.S. at 9-10. Pain alone can satisfy this requirement, even if there is no "enduring injury," as long as it is not insignificant. *Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996). The subjective component requires the inmate to show that the defendant applied the force "maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

A review of Murrell's medical records establishes that Murrell suffered no more than *de minimus* pain or injury. Immediately following the incident Murrell was seen by prison medical staff. Subjectively, Murrell complained of pain in his wrists and shortness of breath. Objectively, prison staff noted no abnormalities on his wrists, abrasions on his left clavicle and side of his neck,

11

a weak grip in his hands, and his difficulty in standing upright.  Staff treated Murrell with minor first aid.  Later that evening Murrell was taken to HRMC for x-rays, which showed no indication of any broken bones.  HRMC staff treated Murrell with Tylenol for his complaints of pain.  [R. 22-5 at pg. 2, Declaration of Sherry Slone, Registered Nurse at USP-Big Sandy; R. 22-6 at pgs. 32-44]

Murrell responds to this information by alleging that the records from HRMC indicate that he suffered a fractured wrist, a dislocated clavicle, and a contusion on his upper chest.  [R. 24, Response at pg. 8]  However, the shorthand notations to which Murrell refers appear in the medical records where the examining physician ordered x-rays from radiology to check for the referenced symptoms; they are not a diagnosis. [R. 22-6 at pg. 34]  The physician's notes upon reviewing those x-rays indicate that they were negative for signs of fracture or dislocation, and Murrell was discharged with only a prescription for Tylenol, a treatment regimen inconsistent with any indication of traumatic injury.  [R. 24 at pg. 38]  The chest x-ray findings indicated that there was "[n]o hilar or mediastinal abnormality." and "[t]he bony thorax is intact." [R. 24 at pg. 39]  Similarly, the x-ray of his left clavicle showed "[n]o obvious fracture" and that "[t] AC joint and sternoclavicular joints appear intact.  Bone density is normal.  The adjacent ribs appear unremarkable."  [R. 24 at pg. 40] Finally, the x-ray of Murrell's right forearm showed "[n]o evidence of acute fracture or subluxation" and "[p]roximal and distal joint relationships are maintained." [R. 24 at pg. 41]  In sum, the physician's notes evaluating the x-rays establish that Murrell's present allegations - that he suffered broken or dislocated bones as a result of the incident - are false.

The objective medical records refute any notion that Murrell suffered anything more than the temporary physical discomfort normally associated with his altercation with prison staff, and which resulted in treatment limited to bandages and Tylenol.  Accordingly, Murrell has failed to

demonstrate a sufficiently serious injury to support any claim of excessive force as a matter of law. *See, e.g., Knight v. Hall*, 2006 WL 2325018, **4-5 (W.D.Va. 2006) (rejecting excessive force claim, notwithstanding inmate's claim of injuries to back, knee, neck, and toe, difficulties breathing and blood in urine, where such subjective claims were inconsistent with objective medical records and treatment with only Tylenol); *Perkins v. Brown*, 285 F.Supp.2d 279, 284 (E.D.N.Y. 2003) (rejecting excessive force claim by prisoner where allegations of broken lip, swollen nose, eye, fingers, and wrists, jaw pain, chest bruising, based solely on plaintiff's testimony were contradicted by plaintiff's prior statements and medical evidence); *Stanley v. Hejirika*, 134 F.3d 629, 637-38 (4th Cir.1998).

## III. Conclusion

Accordingly, **IT IS ORDERED** as follows:

1.    Defendants' Motion for an Extension of Time [R. 25] is **GRANTED**.

2.    Defendants' Motion to Dismiss, or In the Alternative, Motion for Summary Judgment [R. 22] is **GRANTED**.

3.    The claims against Defendant Miller are **DISMISSED** pursuant to 28 U.S.C. §§ 1915e, 1915A.

4.    Plaintiff's Complaint [R. 2] is **DISMISSED WITH PREJUDICE.**

5.    Plaintiff's Motion for Appointment of Counsel [R. 27] is **DENIED AS MOOT**.

6.    An appropriate Judgment will be entered contemporaneously herewith.

Dated this 11th day of February, 2009.



Signed By:

*Karen K. Caldwell*

**United States District Judge**